ACCEPTED
05-17-01221-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/29/2018 2:46 PM
LISA MATZ
CLERK

Lisa Matz, Clerk

5th Court of Appeals
FILED: 1-31-18

## NO. 05-17-01221-CV

# In the Fifth Court of Appeals
# Dallas, Texas

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
01/29/2018 2:46:44 PM
LISA MATZ
Clerk

THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER,

Appellant,

v.

CHARLES WAYNE TAYLOR and ROSEMARY TAYLOR,

Appellees.

On Appeal from the 14th Judicial District of Dallas County, Texas
Trial Court Cause No. DC-16-08022
The Honorable Eric V. Moyé, Presiding Judge

## APPELLEES' BRIEF

Brenda J. Williams
State Bar No. 21515300
Bank of America, Oak Cliff Tower
400 South Zang Blvd., Suite 1200
Dallas, Texas 75208
Tel: (214) 946-0865
Fax: (214) 948-3038
bwilliams@bjwilliamslaw.com
Counsel for Appellees
Charles Wayne Taylor and
Rosemary Taylor

**ORAL ARGUMENT REQUESTED**

# REQUEST FOR ORAL ARGUMENT

Pursuant to Rules 39.1 and 39.7 of the Texas Rules of Appellate Procedure, Appellees hereby request oral argument in this case.

# TABLE OF CONTENTS

PAGE

REQUEST FOR ORAL ARGUMENT ................................................................. ii

TABLE OF CONTENTS .......................................................................... iii-iv

INDEX OF AUTHORITIES .......................................................................... v-viii

STATEMENT OF THE CASE............................................................ix-x

ISSUE PRESENTED ................................................................................xi

APPELLEES' BRIEF ............................................................................... 1

FACTUAL BACKROUND AND PROCEDURAL HISTORY ............................. 2

SUMMARY OF THE ARGUMENT .......................................................4-5

ARGUMENT AND AUTHORITIES ..................................................... 6-13

ISSUE: DID THE TRIAL COURT ERR IN DENYING UT SOUTHWESTERN'S MEDICAL Center's PLEA TO THE JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

    A.    Standard of Review ......................................................6

    B.    Appellees filed suit Within the TMLA Statute of Limitations....7-8

    C.    UTSW as a Component of UT System Notice and Was Not Placed

        At Any Disadvantage............................................ 8-12

    D.    UTSW had Notice When Original Petition was filed and Served on UT System's General Counsel......................................13

PRAYER.................................................................................................................... 14

CERTIFICATE OF COMPLIANCE............................................................... 14

CERTIFICATE OF SERVICE......................................................................... 14-15

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Bailey v. Univ. of Texas Health Science Center at San Antonio,*
　　261 S.W.3d 147 (Tex. App.—San Antonio 2008, pet. granted)............ 11

Barth v. Bank of America, N.A. 351 S.W. 3d 875 (Tex. 2011).....................11

*Bland I.S.D. v. Blue,.*
　　34 S.W.3d 547 (Tex. 2000)...............................................................6

*Craig v. White Plaza Hotel,*
　　*289 S.W. 2d 625 (Tex. Civ. App.-Waco 1956, writ ref'd n.r.e)................10*

Charter Oak Fire Ins. Co, v. Square, 526 S.W. 2d 635 (Tex. Civ. App.-Waco
1975, writ ref'd n.r.e.).............................................................................10

*Diversicare General Partners, Inc. v. Rubio,*
　　185 S.W.3d 842 (Tex. 2005)..............................................................7

Garland Community Hospital v. Rose,
　　156 S.W. 3d 541(Tex. 2004)..............................................................7

Dougherty v. Gifford,
　　826 S.W. 2d 668 (Tex App.-Texarkana 1992, no writ)..........................10

Flour Bluff I.S.D. v. Bass,
　　133 S.W. 3d 272 (Tex 2004..............................................................12

*In Re Greater Houston Orthopaedic Specialists, Inc.,*
　　*S.W 3d (Tex.2009)................................................................10*

*Murphy v. Russell,*
　　167 S.W.3d 835 (Tex. 2005)...............................................................8

*Prairie View A&M Univ. v. Chatha*,
    381 S.W.3d 500 (Tex. 2012) .................................................................8

Reddy Partnership/5900 North Freeway LP v. Harris County Appraisal District,
    370 S.W. 3d 373 (Tex. 2012)............................................. 5,10,13

Rico v. Judson Lofts, Ltd.,
    404 S.W. 3d 762 (Tex. App.-San Antonio 2013, pet. denied)...............10

Shell Pipe Line Co. v. Wheeler,
    730 S.W. 2d 851 (Tex. App.-El Paso 1987, writ ref'd n.r.e.)...............11

*Sloan v. Farmer*,
    217 S.W.3d 763 (Tex. App.—Dallas 2007, pet. denied).......................7

*Texas Dept. of Parks & Wildlife v. Miranda,.*
    133 S.W.3d 217 (Tex. 2004) .................................................................6

*Texas A&M Univ. v. Koseoglu*,
    233 S.W.3d 835  (Tex. 2007)................................................................6

*Univ. of Texas at Austin v. Hayes*,
    327 S.W.3d 113 (Tex. 2010) .................................................................6

*Univ. of Texas Health Science Center at San Antonio v. Bailey*,
    332 S.W.3d 395 (Tex. 2011)................................................................11

*Whitehead v. Univ. of Texas Health Science Ctr. at San Antonio*,
    854 S.W.2d 175 (Tex. App.—San Antonio 1993, no pet.) ........................ 12

## STATUTES

Texas Education Code Ann.
    §§ 65.11 .............................................................................8
    §§ 65.31(g) .........................................................................8
    §§ 65.31(a) ......................................................................8,9
    §§ 65.02 ..........................................................................8,9

Texas Medical Liability Act (TMLA)
    Chapter 101...............................................................ix,x,2,4,7

Texas Tort Claims Act (TTCA), Texas Civil Practice and Remedies Code

    §§ 74.001 ......................................................................ix,x,7

    §§ 74.051 ........................................................................ix,x,2

    §§ 74.251 ........................................................................ix,x,2

## **RULES**

Texas Rules of Appellate Procedure

Rule 38.2............................................................................1

Rules 39.1 and 39.7..........................................................ii

Rule 9.2..........................................................................14

Rule 9.4..........................................................................14

Rule 9.5(b)................................................................. 14,15

Texas Rules of Civil Procedure

Rule 62..........................................................................10

## STATEMENT OF THE CASE

This case is a health care liability claim filed against a governmental unit of the State of Texas under the Texas Medical Liability Act (TMLA), Chapter 74, and the Texas Tort Claims Act (TTCA), Chapter 101, of the Texas Civil Practice and Remedies Code. Appellees' health care liability claims arise out of two bladder related surgeries performed on Charles Wayne Taylor at the V.A. North Texas Health Care System in Dallas, Texas, on April 21 and April 24, 2014. During these procedures, Appellees assert that a physician at UT Southwestern committed negligence that led to alleged personal injuries to Mr. and Mrs. Taylor. Appellees provided pre-suit notice of claim to University of Texas Southwestern Medical Center by sending the notice to Leah Hurley, The applicable statute of limitations under the TMLA, which is two (2) years plus 75 days for Appellees' claim, ran on July 8, 2016. The lawsuit naming the defendant as "University of Texas Southwestern Medical Center/The University of Texas System" was filed on July 5, 2016. On July 18, 2016, the original petition and citation was served by certified mail on the Vice Chancellor and General Counsel for University of Texas System. (CR 117-118). Appellees amended the petition revising the defendant's name to "University of Texas Southwestern Medical Center" on February 22, 2017. (CR138-143). University of Texas Southwestern Medical Center is a component of The University of Texas System and therefore clearly had notice of the lawsuit on on July 18, 2016 when service made on UT System Chancellor and General Counsel. UT Southwestern Medical Center and UT System are closely related entities and the filing of the amended petition related back to the filing of

the original petition. (App. A). In this case, there was no failure to comply with the applicable statute of limitations under TMLA which negated a waiver of UT Southwestern's sovereign immunity under the TTCA.

## ISSUE PRESENTED

DID THE TRIAL COURT ERR IN DENYING UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER'S PLEA TO THE JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

NO. 05-17-01221-CV

# In the Fifth Court of Appeals
# Dallas, Texas

THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER,
Appellant,

v.

CHARLES WAYNE TAYLOR and ROSEMARY TAYLOR,
Appellees.

On Appeal from the 14th Judicial District of Dallas County, Texas
Trial Court Cause No. DC-16-08022
The Honorable Eric V. Moyé, Presiding Judge

## APPELLEES' BRIEF

TO THE HONORABLE FIFTH COURT OF APPEALS:

Pursuant to Rule 38.2 of the Texas Rules of Appellate Procedure, Appellees' Brief Charles Wayne Taylor and Rosemary Taylor ("Taylors"), in the above styled and numbered appeal, files this Brief and would respectfully show that the Court should affirm the trial court order denying University of Texas Southwestern Medical Center's Plea to the Jurisdiction and Motion for Summary Judgment.

## FACTUAL BACKGOUND AND PROCEDURAL HISTORY

Plaintiffs' Original Petition was filed naming "University of Texas Southwestern Medical Center/University of Texas System" as Defendant on July 5, 2016, within the two-year and seventy-five-day statute of limitations period as set out in Texas Healthcare Liability Act, Texas Civil Practice and Remedies Code §§ 74.051 & 74.251. Plaintiffs' First Amended Original Petition, was filed on February 22, 2017 and revised the name of the Defendant to "University of Texas Southwestern Medical Center" ("UTSW")

In addition, UTSW had actual notice of the claim within the six month time period allowed by the TTCA. Plaintiff's injuries claimed in this case were related to treatment by UTWS physician, Ryan J. Mauck, during April 21 to April 30, 2014 at the Dallas Veterans Medical Center involving surgical equipment being left in after surgery. On July 8, 2014 surgery was performed at UTSW by another UTWS physician to remove the surgical equipment left in during the prior surgery.

On April 19, 2016, Appellees certified mailed Leah Hurley, UTSW's Vice President, Legal Affairs the pre-suit notice of claim pursuant to §74.051 of the TMLA. ( CR 280-285) On July 5, 2016, Plaintiffs' Original Petition was filed naming "University of Texas Southwestern Medical Center/The University of Texas System as the defendant in the case. (CR 13-18). On July 18, 2016, David Miller, of UT System's General Counsel's Office signed and accepted the citation which stated "University of Texas

2

Southwestern Medical Center" as the Defendant on the behalf of the Chancellor and General Counsel, Daniel H. Sharphorn, JD. (117-118, 82). UTSW does not dispute that UTSW is not a component of and one of fourteen educational institutions governed by UT System and are therefore closely related entities. (CR 120-122) (App. A). On December 22, 2016, UT System filed a Plea to the Jurisdiction alleging that no UT System employees were involved in the health care in question. On February 22, 2017 Plaintiffs filed their First Amended Original Petition, which changed the name of the Plaintiff from "University of Texas Southwestern Medical Center/The University of Texas System" to "University of Texas Southwestern Medical Center" (CR 73-96). On February 28, 2017, the Court granted UT System's Plea and severed the UT System from the amended suit. (CR-147-148). Defendant UTSW was served with Plaintiffs' First Amended Original Petition on March 4, 2017 and filed their Original Answer and Jury Demand on March 23, 2017 (CR 256-259, 260-265).

UTSW filed a Plea to the Jurisdiction and Motion for Summary Judgment based on the defense of statute of limitations. (CR 213-265). On October 4, 2017, an oral hearing was held and the trial court denied UTSW's Plea to Jurisdiction and Motion for Summary Judgment (CR 336).

## SUMMARY OF ARGUMENT

UTSW's sovereign immunity has been waived in this case. Appellees complied with all prerequisites to filing suit and timely filed suit within the statutory period. In health care liability claims against state governmental units, a plaintiff must comply with the requirements of both the TTCA and Texas Medical Liability Act (TMLA). The applicable statute of limitations under the TMLA is two-years plus 75 days, if proper pre-suit notice of claim is provided. Appellees argument is based on the amended petition relating back to the filing of the original petition and therefore timely filed in instances where there is merely a misnaming of the defendant, involves related parties, misnamed party had notice and was not placed at any disadvantage.

Appellees did not fail to comply with TMLA statute of limitations in filing their suit against UT Southwestern Medical Center/UT System, which amounted to simply misnaming the Defendant. Appellees filed their original suit against "University of Texas Southwestern Medical Center/ University of Texas System" within the TMLA's limitations period. In this case, the misnaming involved closely related parties as University of Texas Southwestern Medical Center is a component

of The University of Texas System. (App. A).

Appellees misnaming the Defendant in their original petition does not prevent the waiver of UT Southwestern's sovereign immunity under the TTCA. In Appellees case, the amended petition related back to the original suit which named "University of Texas Southwestern Medical Center/University of Texas System" as the Defendant. In Appellees' case, the tolling doctrines of misnomer and/or misidentification allows an abatement of the proceeding until the misnomer is corrected. *Reddy Partnership/5900 North Freeway LP v. Harris County Appraisal District,* 370 S.W. 3d 373, 55 Tex. Sup. Ct. J. 1099, 1101 (Tex. 2012). Appellees lawsuit was timely filed and the amended petition related back and merely served to clarify the name of the Defendant. Therefore, the trial did not commit reversible error in denying UTSW's Plea to the Jurisdiction.

## ARGUMENT AND AUTHORITIES

### A. Standard of Review

The Court must review evidence as it relates to the question of the Court's jurisdiction. *Miranda*, 133 S.W.3d at 223 & 226-228; *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the jurisdictional evidence is undisputed or fails to raise a fact question, the suit should be dismissed for want of subject matter jurisdiction; *Texas A&M Univ. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). However, courts are to construe the pleadings liberally in favor of the Plaintif. In *Univ. of Texas at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010), the Texas Supreme Court reasoned as follows:

> When a plea the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S. W. 3d at 226. The Plaintiff bears the burden to allege facts demonstrating jurisdiction, and we construe the pleadings liberally in the plaintiff's favor. *Id*. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Id* at 227-228.

## B.  Appellees Filed Suit Within the TMLA Statue of Limitations

UTSW contends that in a statutory cause of action against a governmental entity, the failure to adhere to the statute's mandatory provisions that must be accomplished before filing suit is a jurisdictional bar to suit. Appellees filed suit on July 5, 2016, which was within the applicable statute of limitations. (CR 13-18). The facts in Appellees case are clearly distinguishable from all of the cases cited by UT Southwestern in light of the fact that Appellees lawsuit was filed within the two years and 75 day time period. In bringing their medical negligence/ health care liability claim against UTSW/UTS, Appellees complied with the TMLA as well as the TTCA. Tex. Civ. Prac. Rem. Code Ann. §§ 74.001 *et seq*. The cases cited by Appellant to support their argument, all involve facts in which the lawsuit was filed after the statute of limitation ran or the plaintiff's failure related timely perform other prerequisites to filing suit. In *Diversicare General Partners, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005), the medical liability suit was filed four years after claim arose. In *Murphy v. Russell*, 167 S.W.3d 835, 837-38 (Tex. 2005), expert report was not filed within the 180-day time period. In *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004), the issue was whether there was a good faith effort to comply with definition of an expert report. In *Sloan v. Farmer*, 217 S.W.3d 763, 767 (Tex. App.—Dallas 2007, pet.

denied), involved the failure of the plaintiff to file an expert report. Furthermore, *Prairie View A&M University v. Chatha*, 381 S.W.3d at 510, was cited by UTSW relating to, no waiver of immunity where a party fails to adhere to the statutes mandatory provisions. *Chatha* involved whether the 180-day statutory pre-suit requirement of filing a complaint with the Texas Workforce Commission was required to be complied with prior to the filing an EEOC discrimination lawsuit The cases UTSW is relying on to support their no waiver argument are clearly distinguishable from Appellees case, in that Appellees timely filed their original suit and timely satisfied all other pre-suit requirements within the statutory period.

## C.   UTWS as a Component of UTS and Subject to UTS Governance had Notice of Original Petition, Was Not Surprised or Placed at any Disavantge

Section 65.11 of the Education Code charges the UT Board of Regents with the "administration" and "organization" of the UT System institutions and entities to "achieve the maximum operating efficiency of such institutions and entities." Tex. Educ. Code Ann. §65.11 (West 2002). (App. A). Section 65.31(g) allows the UT Board of Regents "by rule to delegate a power or duty of the board to a committee, officer, employee, or other agent of the board." *Id.* §65.31(g). (App. A) Section 65.31(a) provides that the UT Board of Regents "is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included

in a part of The University of Texas System." *Id.* § 65.31(a). Section 65.02 specifically lists 12 entities that comprise the UT System. *Id.* § 65.02. It further lists 29 subordinate entities that are included within the 12 main entities. *Id.* The statute specifically identifies UT Southwestern Medical Center.*Id.* Subsection (b) provides that "The University of Texas System shall also be composed of such other institutions and entities as from time to time may be assigned by specific legislative act to the governance, control, jurisdiction, or management of The University of Texas System." *Id.* § 65.02(b).

The Chancellor and General Counsel for University of Texas Systems was served via certified mail with Plaintiff's Original Petition on July 18, 2016 and the Officer's Return shows "University of Texas Southwestern Medical Center" as the Defendant. (CR 117-118). The citation was accepted by UT Systems, presumably on behalf of UTSW as one of their component institutions. UTSW has not alleged that they were not put on notice of the lawsuit or were placed at any disadvantage by the misnomer of the plaintiff in the original petition as, "University of Texas Southwestern Medical Center/ University of Texas System".

Pursuant to Texas Rule of Civil Procedure 62, an error in naming a party to a suit or a faulty description of the status or capacity of a party may be corrected by a proper amendment to the pleadings *Tex. R. Civ. P. 62.* When the error consists merely of a "misnomer," such as misstating the party's name, capacity, or status, the amended pleading relates back to the original filing and tolls the applicable statute of limitations *In re Greater Houston Orthopaedic Specialists, Inc., 295 S.W.3d 323, 325–326 (Tex. 2009)* (plaintiff's misidentification of itself did not mislead defendant); *Rico v. Judson Lofts ,Ltd, 404 S.W.3d 762, 765–766 (Tex. App.—San Antonio 2013, pet. denied) Charter Oak Fire Ins. Co. v. Square, 526 S.W.2d 635, 637 (Tex. Civ. App.—Waco 1975, writ ref'd n.r.e.) Craig v. White Plaza Hotel, 289S.W.2d 625, 630 (Tex. Civ. App.—Waco 1956, writ ref'd n.r.e.) Dougherty v. Gifford, 826 S.W.2d 668, 676–677(Tex. App.—Texarkana 1992, no writ.* In cases involving a misnomer that is not misleading and the parties are aware of the entity the misnomer is referring to the wrongly identified party is entitled to an abatement of the proceeding until the misnomer is corrected. *Reddy Partnership/5900 North Freeway LP v. Harris County Appraisal District, 370 S.W.3d 373, 55 Tex. Sup. Ct. J. 1099, 1101 (Tex. 2012)* (no prejudice or disadvantage from misnomer);

10

*Barth v. Bank of America, N.A., 351 S.W.3d 875, 876–877 (Tex. 2011)* (no misnomer when party misnames itself or another party, but correct parties are involved); *Shell Pipe Line Co. v. Wheeler, 730 S.W.2d 851, 852 (Tex. App.—El Paso 1987, writ ref'd n.r.e.)* (prior dealings and correspondence between parties in correct name of corporation precluded finding of surprise when amendment of pleadings offered to correct name).

In *University of Texas Health Science Center v. Bailey, 332 S.W. 3d 395(Tex. 2011)*, the Supreme Court of Texas, stated that the relation-back doctrine does not affect the running of limitations on a cause of action; rather, it defines what is to be included in "the action" to which limitations applies. The Court reasoned as follows:

> The relation-back doctrine does not affect the running of limitations on a cause of action; rather, it defines what is to be included in "the action" to which limitations applies. The common law took a very narrow view. Professor Wright and his co-authors tell us:
>
>> At common law a litigant had very little freedom to amend the written pleadings other than to correct formal defects and remedy errors of oversight. Thus, an amendment that attempted to introduce **[\*\*12]** a new cause of action or to change the form of the action — for example, from trespass to trespass on the case — would be disallowed. [24]
>
> Our early view was similarly strict. In a 1901 case, we held that in a suit for breach of an express contract, a claim for breach of an implied contract, added by amended pleadings, was barred by limitations. [25] To avoid the bar of limitations, we said, "[i]t is not sufficient that the causes of action be

similar in their nature, but they must be essentially identical." [26] The Legislature took a broader approach in 1931, enacting the rule that remains the law today:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence. [27]

But narrow or broad, the purpose of the relation-back doctrine is to determine not *when*, but *on what* limitations runs. Because the doctrine does not impede the running of [**13] limitations on health care liability claims, it is not, under *Chilkewitz*, an "other law", the application of which is forbidden. Even apart from *Chilkewitz*, because the doctrine determines "the action" that must be timely filed, its application is a matter of necessity. 322 S.W. 3d 395, 399.

Furthermore, the limitations period should be tolled if there is a determination that Plaintiff misidentified the Defendant in the original petition. "Misidentification", is the naming of an existing person or entity under the mistaken belief that that person is the correct party. The Texas Supreme Court has held that the statute of limitations will be tolled in misidentification cases if there are two separate, but related, entities that use a similar trade name and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake. *Flour Bluff I.S.D. v. Bass, 133 S.W.3d 272, 274 (Tex. 2004)*.

12

## D. UTSW Had Notice of the Suit when Plaintiff's Original Petition was Filed and served on UT System's General Counsel

UTSW's alternative argument relating to failure of Appellees to use due diligence in obtaining service on UTSW, does not apply in this case. The purpose of service is to provide notice of the suit. UTSW had notice of the suit when UT System's General Counsel, Daniel H. Sharphorn, J.D. was served with citation on July 18, 2016 (CR117-118, 82). According to UT System's website, the Office of their General Counsel provides comprehensive legal services to and for their 14 UT institutions, and manages litigation services provided by the Attorney General's Office and outside counsel. (CR135-137) (App. B). UTSW is one of 14 UT institutions. (CR120-123) (App. A). In addition, Jason Warner, Assistant Attorney General, Office of Attorney General's was UT System's Counsel related to Appellees original petition and was UTSW's for the amended petition. (CR 19-22, 149-152).

In Appellees' case, the tolling doctrines of misnomer and/or misidentification allows an abatement of the proceeding until the misnomer is corrected. *Reddy Partnership/5900 North Freeway LP v. Harris County Appraisal District,* 370 S.W. 3d 373, 55 Tex. Sup. Ct. J. 1099, 1101 (Tex. 2012).

-

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees pray that this Court affirm the trial court's denial of its Plea to the Jurisdiction and Motion for Summary Judgment, and such further relief, both at law and in equity, to which they may be justly entitled.

Respectfully submitted,

/s/ *Brenda J. Williams*

Brenda J. Williams
State Bar No. 21515300
Bank of America, Oak Cliff Tower
400 South Zang, Suite 1200
(214) 946-0865 Tel
(214) 948-3038 Fax
bwilliams@bjwilliamslaw.com
Attorney for Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Appellees' Brief word count is in accordance with Tex. R. App. P. 9.4.

/s/ *Brenda J. Williams*
**Brenda J. Williams**

## CERTIFICATE OF SERVICE

I do hereby certify compliance with Tex. R. App. P. 9.2 and 9.5(b). A true and correct copy of the foregoing instrument has been served on all counsel, by electronic transmission to the electronic mail address on file with the electronic filing manager pursuant to Rule 9.5(b)(1). If a party has not designated an electronic mail address with the electronic filing manager, the party was served a true and correct

copy of the foregoing instrument in person, by mail, by commercial delivery service, by fax or by email, or by such other manner as the Court in its discretion may direct pursuant to Rule 9.5(b)(2). Service was made on all parties as provided on January 28, 2017

/s/ *Brenda J. Williams*

**Brenda J. Williams**

# In the Fifth Court of Appeals
# Dallas, Texas

THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER,
*Appellant,*

v.

CHARLES WAYNE TAYLOR and ROSEMARY TAYLOR,
*Appellees.*

## APPENDIX TO APPELEES' BRIEF

Appendix **A**      Texas Education Code Ann. §§ 65.01-65.16; 65.31

Appendix **B**      Website-University of Texas System- The Office of General Counsel

# APPENDIX "A"

EDUCATION CODE

TITLE 3. HIGHER EDUCATION

SUBTITLE C. THE UNIVERSITY OF TEXAS SYSTEM

CHAPTER 65. ADMINISTRATION OF THE UNIVERSITY OF TEXAS SYSTEM

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 65.01. DEFINITIONS. In this chapter:

(1) "System" or "university system" means The University of Texas System.

(2) "Board" means the board of regents of The University of Texas System.

Acts 1971, 62nd Leg., p. 3144, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971.


Sec. 65.02. ORGANIZATION. (a) The University of Texas System is composed of the following institutions and entities:

(1) The University of Texas at Arlington, including:

(A) The University of Texas Institute of Urban Studies at Arlington; and

(B) The University of Texas School of Nursing at Arlington;

(2) The University of Texas at Austin, including:

(A) The University of Texas Marine Science Institute;

(B) The University of Texas McDonald Observatory at Mount Locke; and

(C) The University of Texas School of Nursing at Austin;

(3) The University of Texas at Dallas;

(4) The University of Texas at El Paso, including The University of Texas School of Nursing at El Paso;

(5) The University of Texas of the Permian Basin;

(6) The University of Texas at San Antonio, including the University of Texas Institute of Texan Cultures at San Antonio;

(7) The University of Texas Southwestern Medical Center, including:

(A) The University of Texas Southwestern Medical School at Dallas;

(B) The University of Texas Southwestern Graduate School of Biomedical Sciences at Dallas; and

(C) The University of Texas Southwestern Allied Health Sciences School at Dallas;

(8) The University of Texas Medical Branch at Galveston, including:

(A) The University of Texas Medical School at Galveston;

(B) The University of Texas Graduate School of Biomedical Sciences at Galveston;

(C) The University of Texas School of Allied Health Sciences at Galveston;

(D) The University of Texas Marine Biomedical Institute at Galveston;

(E) The University of Texas Hospitals at Galveston; and

(F) The University of Texas School of Nursing at Galveston;

(9) The University of Texas Health Science Center at Houston, including:

(A) The University of Texas Medical School at Houston;

(B) The University of Texas Dental Branch at Houston;

(C) The University of Texas Graduate School of Biomedical Sciences at Houston;

(D) The University of Texas School of Health Information Sciences at Houston;

(E) The University of Texas School of Public Health at Houston;

(F) The University of Texas Speech and Hearing Institute at Houston; and

(G) The University of Texas School of Nursing at Houston;

(10) The University of Texas Health Science Center at San Antonio, including:

(A) The University of Texas Medical School at San Antonio;

(B) The University of Texas Dental School at San Antonio;

(C) The University of Texas Graduate School of Biomedical Sciences at San Antonio;

(D) The University of Texas School of Allied Health Sciences at San Antonio; and

(E) The University of Texas School of Nursing at San Antonio;

(11) The University of Texas M. D. Anderson Cancer Center, including:

(A) The University of Texas M. D. Anderson Hospital;

(B) The University of Texas M. D. Anderson Tumor Institute; and

(C) The University of Texas M. D. Anderson Science Park; and

(12) The University of Texas Health Science Center--South Texas, including The University of Texas Medical School--South Texas, if established under Subchapter N, Chapter 74.

(b) The University of Texas System shall also be composed of such other institutions and entities as from time to time may be assigned by specific legislative act to the governance, control, jurisdiction, or management of The University of Texas System.

Added by Acts 1973, 63rd Leg., p. 1186, ch. 435, Sec. 1, eff. Aug. 27, 1973. Amended by Acts 1989, 71st Leg., ch. 644, Sec. 2, eff. June 14, 1989; Acts 2001, 77th Leg., ch. 325, Sec. 1, eff. Sept. 1, 2001.
Amended by:
Acts 2009, 81st Leg., R.S., Ch. 1341 (S.B. 98), Sec. 5, eff. June 19, 2009.
Acts 2013, 83rd Leg., R.S., Ch. 179 (H.B. 1844), Sec. 9, eff. September 1, 2013.


SUBCHAPTER B. ADMINISTRATIVE PROVISIONS

BOARD OF REGENTS.  The government of the university system is vested in a board of nine regents appointed by the governor with the advice and consent of the senate.  The board may provide for the administration, organization, and names of the institutions and entities in The University of Texas System in such a way as will achieve the maximum operating efficiency of such institutions and entities, provided, however, that no institution or entity of The University of Texas System not authorized by specific legislative act to offer a four-year undergraduate program as of the effective date of this Act shall offer any such four-year undergraduate program without prior recommendation and approval by a two-thirds vote of the Texas Higher Education Coordinating Board and a specific act of the Legislature.

Acts 1971, 62nd Leg., p. 3144, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971.  Amended by Acts 1973, 63rd Leg., p. 1188, ch. 435, Sec. 2, eff. Aug. 27, 1973;  Acts 1989, 71st Leg., ch. 644, Sec. 3, eff. June 14, 1989.


Sec. 65.12.  QUALIFICATIONS;  TERMS.  Each member of the board shall be a qualified voter;  and the members shall be selected from different portions of the state.  The members hold office for staggered terms of six years, with the terms of three expiring February 1 of odd-numbered years.

Acts 1971, 62nd Leg., p. 3144, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971.  Amended by Acts 1983, 68th Leg., p. 2837, ch. 484, art. III, Sec. 1, eff. June 19, 1983.


Sec. 65.13.  BOARD OFFICERS.  The board shall elect a chairman from its members to serve at the will of the board.  The comptroller shall be the treasurer of the university system.

Acts 1971, 62nd Leg., p. 3144, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971.  Amended by Acts 1997, 75th Leg., ch. 1423, Sec. 5.16, eff. Sept. 1, 1997.

Sec. 65.14. EXPENSES. The reasonable expenses incurred by members of the board in the discharge of their duties shall be paid from the available university fund.

Acts 1971, 62nd Leg., p. 3144, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971.


Sec. 65.15. SEAL. The board may make and use a common seal and may alter it at will.

Acts 1971, 62nd Leg., p. 3145, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971.


Sec. 65.16. SYSTEM CENTRAL ADMINISTRATION OFFICE; EXECUTIVE OFFICER. (a) The board shall establish a central administration of the university system to provide oversight and coordination of the activities of the system and each component institution within the system.

(b) The board shall appoint a chief executive officer and such other executive officers of the system central administration as the board considers appropriate. The board shall determine each officer's term of appointment, salary, and duties.

(c) Subject to the power and authority of the board, the chief executive officer is responsible for the general management of the university system within the policies of the board and for making recommendations to the board concerning the organization of the university system and the appointment of the chief administrative officer for each component institution within the system.

(d) In addition to other powers and duties provided by this code or other law, the central administration of the system shall recommend policies and rules to the governing board of the system to ensure conformity with all laws and rules and to provide uniformity in data collection and financial reporting procedures.

Added by Acts 1989, 71st Leg., ch. 464, Sec. 1, eff. June 14, 1989.


SUBCHAPTER C. POWERS AND DUTIES OF BOARD

Sec. 65.31. GENERAL POWERS AND DUTIES. (a) The board is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included in a part of The University of Texas System.

(b) The board is authorized to prescribe for each of the component institutions courses and programs leading to such degrees as are customarily offered in outstanding American universities, and to award all such degrees. It is the intent of the legislature that such degrees shall include baccalaureate, master's, and doctoral degrees, and their equivalents, but no new department, school, or degree-program shall be instituted without the prior approval of the Coordinating Board, Texas College and University System.

(c) The board has authority to promulgate and enforce such other rules and regulations for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable. The board is specifically authorized and empowered to determine and prescribe the number of students that shall be admitted to any course, department, school, college, degree-program, or institution under its governance.

(d) The board is specifically authorized to make joint appointments in the component institutions under its governance. The salary of any person who receives such joint appointment shall be apportioned to the appointing institutions on the basis of services rendered.

(e) The board is specifically authorized, upon terms and conditions acceptable to it, to accept, retain in depositories of its choosing, and administer gifts, grants, or donations of any kind, from any source, for use by the system or any of the component institutions of the system.

(f) No component institution which is not authorized to offer a four-year undergraduate program shall offer a four-year undergraduate program without the specific authorization of the legislature.

(g) The board by rule may delegate a power or duty of the board to a committee, officer, employee, or other agent of the board.

Acts 1971, 62nd Leg., p. 3145, ch. 1024, art. 1, Sec. 1, eff. Sept. 1, 1971. Amended by Acts 1971, 62nd Leg., p. 3360, ch. 1024, art. 2,

# APPENDIX "B"

Executive Vice Chancellor: **Scott C. Kelley, Ed.D.**
Business Affairs Website

The Office of Business Affairs works with business officers at the 14 institutions in setting and complying with policies and procedures for all business operations and management.

The Office of Business Affairs directs and coordinates the following offices:

- Controller & Chief Budget Officer
  - Historically Underutilized Business (HUB)

- Director of Police
- Employee Benefits
- Employee Services
- Facilities planning and construction
- Finance
- Systemwide Information Services
- Technology and Information Services
- University Lands

Systemwide Information Services

Systemwide Compliance

Technology and Information Services

Texas Medical Dental Schools
Application Service (TMDSAS)

Travel Services

University Lands

## The Office of General Counsel

Vice Chancellor and General Counsel: **Daniel H. Sharphorn, J.D.**
General Counsel Website

The Office of General Counsel provides comprehensive legal services and professional expertise to and for System administration and the 14 UT institutions, and coordinates and manages litigation services provided by the Attorney General's Office and outside counsel. It also serves as administrator of the UT System medical liability self-insurance plan and as ethics advisor for the System.

Additionally, the Office of General Counsel manages and oversees the following functions

- Real Estate Office

## Office of Governmental Relations

Vice Chancellor and Chief Governmental Relations Officer: **Barry R. McBee, J.D.**
Governmental Relations Website

The Office of Governmental Relations monitors governmental affairs affecting higher education and interacts with state and local governments on behalf of the System and its institutions. In collaboration with other UT officials, as well as other higher education entities, the office works closely with legislators, legislative staff and state agencies on a wide variety of issues.

The Office of Governmental Relations directs and coordinates the following office

- The Office of Federal Relations

## Office of External Relations

Privacy

Tax, Employee Benefits and
Gift Planning

**Additional Resources**

Checklists

Document Library

Training Presentations and
Resources

UT System and Outside Links
Resources

Facilities Planning and
Construction

Governmental Relations

Health Affairs

Marketing and
Communications

## Search for Attorneys & Staff

Search by Last Name

Search

© 2017 The University of Texas System.
601 Colorado Street, Austin, Texas 78701-2982. (512) 499-4200

Home                    News    UT Institutions    Regents    Administration    Offices    Quantum Leaps

Vice Chancellor

General Counsel's Office

Attorneys, Professionals and Staff - By Section

Attorneys, Professionals and Staff - By Specialty Area

Administrative and Paraprofessional Staff

**Practice Sections**

Business Law

Claims and Financial Litigation

General Law

Health Law

Real Estate

**Specialty Areas**

Construction

Contracts and Contracting Resources

Contracting and Procurement Practice Group Resource Pages

Delegations of Authority for UT Institutions

Ethics

Intellectual Property

Open Records

Outside Counsel

# The Office of General Counsel

**Join us for the OGC 2017 Legal Conference September 28th & 29th!**

The Office of General Counsel leads and serves our eight academic and six health institutions and UT System Administration to proactively manage legal affairs and solve legal problems to achieve UT System's overall educational mission.

The Office of General Counsel is divided into five sections, as well as specialty area subsections:

- Business Law, with specialty areas in:
  - Construction
    Contracting and Procurement
  - Environmental
    Intellectual Property and Technology Transactions
    Tax, Employee Benefits and Gift Planning

  Claims and Financial Litigation

- General Law

- Health Law, including oversight of:
  - The University of Texas System Professional Medical Liability Benefit Plan
  - Risk Management Education required for all physicians covered by the Plan

  Real Estate

**Resources**

Checklists:
   Catalog Checklist
   Contract Checklists
   IP Checklists

Contract and Procurement Solicitation Intake Form

Insurance & Indemnification Memorandum

Legal Representation Policy

Outside Counsel

The Office of General Counsel Organizational Chart

The Office of General Counsel Principles on Legal Service Delivery

UT System Branding Guidelines

**UT System Offices**

Academic Affairs

Board of Regents

Business Affairs

Chancellor